WILLIAM W. MANLOVE, OSB #891607
Senior Deputy City Attorney
william.manlove@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **HANNAH AHERN,** | Case No.: 3:21-cv-00561-YY |
| **PLAINTIFF,** | |
| v. | **DEFENDANT CITY OF PORTLAND'S ANSWER AND DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT** |
| **ERIK KAMMERER, CITY OF PORTLAND; and JOHN DOES 1-5,** | **JURY TRIAL REQUESTED** |
| **DEFENDANTS.** | |

In accordance with Fed. R. Civ. P. 15(a)(1)(A), Defendant City of Portland ("Defendant City") files Defendant City's Answer and Defenses to Plaintiff's Amended Complaint ("Amended Complaint"), in correspondingly numbered paragraphs as follows:

With respect to Plaintiff's prefatory remarks, Defendant City denies Plaintiff was unlawfully detained, and further denies that it has any pattern or practice of "punishing groups that express sentiments in support of police accountability or against white supremacy." Otherwise, Defendant City lacks information sufficient at this time to admit or deny the

Page  1  –  DEFENDANT CITY OF PORTLAND'S AND DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT

allegations concerning the motivations of Plaintiff, Defendant Kammerer or any third-party groups, and therefore denies those allegations contained in Plaintiff's prefatory remarks.

## JURISDICTION

1. Defendant City admits the Court has jurisdiction for Plaintiff's federal and state law claims.

## VENUE

2. Defendant City admits Plaintiff has properly laid venue.

## PARTIES

3. Defendant City lacks knowledge or information sufficient at this time to admit or deny the citizenship or residency of Plaintiff, and therefore denies the allegations in paragraph 3.

4. Defendant City admits defendant Kammerer is a detective with the Portland Police Bureau ("PPB") and was acting under color of law.

5. Defendant City admits it is a public body under Oregon law, is organized under the laws of the State of Oregon and its municipal home-rule charter, and that the PPB is a bureau within the City of Portland.

6. The allegations in paragraph 6 are not directed to Defendant City.

## FACTUAL ALLEGATIONS

**I. Introduction**

7. Defendant City admits that on August 17, 2019, the Proud Boys, a right-wing group, staged a protest and march in Portland, and that other persons, counterdemonstrators, protested and marched in Portland. Otherwise, Defendant City lacks knowledge or information sufficient at this time to admit or deny the allegations concerning the motivations of the Proud

Boys, or the counterdemonstrators, and therefore denies those allegations in paragraph 7.

8. Defendant City denies PPB's Rapid Response Team ("RRT"), PPB's specialty team for crowd management and crowd control, "targeted… counter-protestors" or cleared any roadways for the purpose of "the Proud Boys to stage a photo opportunity for themselves on Portland's bridgeways." Defendant City further denies that the person arrested for twerking was done so "violently" or without probable cause for a criminal offense. Otherwise, with respect to the motivations and actions of Plaintiff, Defendant City lacks knowledge or information sufficient at this time to admit or deny those allegations, and therefore denies them.

9. Defendant City admits Plaintiff spat in the street at an approaching van of RRT officers. Defendant City lacks knowledge or information sufficient at this time regarding the emotional state when Plaintiff spat in the street at the RRT officers, and therefore denies that allegation.

10. Defendant City denies the allegations in paragraph 10.

11. Defendant City admits the allegations in paragraph 11, and that the criminal charge against Plaintiff was dismissed on March 11, 2020.

## II. Who are the Proud Boys, and What Were They Doing in Portland on August 17, 2019?

12. Defendant City admits that some members of the Proud Boys have protested and marched in Portland, and that the Proud Boys is a right-wing group whose founder has claimed the group promotes "western chauvinism." Defendant City further admits that some members of Proud Boys have engaged in criminal violence and intimidation and have been convicted of those offenses. Defendant City lacks knowledge or information sufficient at this time to admit or deny as to whether the Proud Boys protested and marched in Portland prior to August 17, 2019.

Page 3 – DEFENDANT CITY OF PORTLAND'S AND DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT

Defendant City denies its PPB or RRT have "treated the Proud Boys with softer treatment while brutalizing and arresting counter-demonstrators." Otherwise, Defendant City lacks knowledge or information sufficient at this time to admit or deny the remainder of the allegations in paragraph 12, and therefore deny those allegations.

13. Paragraph 13 is nonsensical. Therefore, Defendant City denies paragraph 13.

14. Defendant City denies the allegations in paragraph 14.

### III. Protests in Portland, Oregon: October 2016 to August 17, 2019.

15. Defendant City denies the allegations in paragraph 15.

16. Defendant City admits that Portland City Ordinance No. 188037 ("Ordinance No. 188037"), was introduced by former Mayor Charlie Hales, and was titled, "Ratify a successor collective bargaining agreement between the City and the PPA relating to the terms and conditions of employment of represented employees in the PPA bargaining unit." Defendant City admits City Council passed Ordinance No. 188037 to a second reading before Council at 9:30 a.m. on October 12, 2016. Defendant City admits that Mayor Hales recessed the Council and reconvened in the Rose Room located in Portland City Hall following repeated disruptions to the meeting. Defendant City admits that at some point City Hall was closed to the public because protestors were disruptive to the business in the building. Defendant City admits that people were advised that City Hall was closed and that they needed to leave, or they could be arrested for trespass. Defendant City admits that many people left as instructed and moved quickly and efficiently towards and through the doorway on SW 5th Avenue. However, other people chose not to leave as instructed and began to block the doorway and push back against PPB officers who were trying to get people to leave. Defendant City lacks knowledge or information

sufficient at this time to admit or deny the remaining allegations contained in paragraph 16, and therefore deny the allegations.

17.  Defendant City admits that PPB responded to many unpermitted protests and demonstrations between November 10 and November 12, 2016. During the course of these demonstrations, protesters took over streets, blocked intersections, and took over bridges and highways. Many protesters threw objects and engaged in property damage, including smashing windows of businesses and smashing the windows of cars at a car dealership. At one point, during the course of these protests, a protester was shot by an individual trying to drive a vehicle on a bridge where a protest was taking place. At times during these protests, in response to specific protester actions, PPB deployed impact munitions and riot control agents. Additionally, on November 12, 2016, PPB officers arrested approximately 38 people who continued to march and protest in the street after repeated announcements informing them that the assembly was unlawful, directing them to disperse, and warning of arrest. Except as expressly admitted herein, Defendant City otherwise denies the allegations contained in paragraph 17.

18.  Defendant City admits that PPB responded to unpermitted protests and demonstrations that took place in Pioneer Square and many surrounding streets on January 20, 2017. During the course of the demonstrations, protesters crowded into streets, blocking intersections and traffic. Protesters threw objects in the crowd and damaged property. There were reports of protesters with weapons, including knives, guns, and hammers. PPB issued multiple audible warnings to disperse, which many in the crowd ignored. The warnings instructed the crowd to disperse or they would be subject to impact munitions and/or devices. Defendant City admits that in the course of responding to the unlawful gatherings and specific protesters'

Page 5 – DEFENDANT CITY OF PORTLAND'S AND DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT

actions, PPB deployed rubber ball distraction devices, pepper spray, and tear gas. Except as expressly admitted herein, Defendant City otherwise denies the allegations set forth in paragraph 18.

19. Defendant City admits that on February 16, 2017, persons marched in downtown Portland to protest the police shooting and killing of Quanice Hayes. Otherwise, Defendant City denies the allegations in paragraph 19.

20. Defendant City admits that on February 20, 2017, a number of different causes drew supporters for a "Not My Presidents Day" rally in Portland. Defendant City further admits that some protesters were congregated in the street in front of the Federal Building on Third Avenue, without a permit, blocking traffic. Defendant City admits that PPB officers, after multiple warnings to protesters to leave the street, engaged in efforts to clear the unpermitted protesters from the street, and that protesters resisted that effort. Defendant City admits that multiple people were arrested for their unlawful conduct. Defendant City admits that Mayor Wheeler's statement regarding the incident is available at https://www.portlandoregon.gov/wheeler/article/629298, and refer to this statement for a complete description of its contents. Except as expressly admitted herein, City defendants otherwise deny the allegations set forth in paragraph 20.

21. Defendant City admits that PPB responded to a protest on April 29, 2017 at Montavilla Park, which involved demonstrators and counter-demonstrators. PPB officers sought to keep the two groups separated while they marched on opposite sides of the street. All individuals that marched, from both groups, were offered rides back to Montavilla Park on TriMet buses. Three individuals were arrested. Except as expressly admitted herein, Defendant

City denies the allegations set forth in paragraph 21.

22.     Defendant City admits that there was a permitted march scheduled and planned for May 1, 2017. At first PPB monitored the gathering, and the march, and the crowd was cooperative. After the march started, some people in the march began throwing rocks at officers. A medic with Portland Fire and Rescue was hit by a full Pepsi can thrown by an individual marching. In addition to the projectiles thrown at police, some individuals marching began to break windows and engage in property damage. PPB encouraged the permitted group to separate from the individuals engaging in violence and property damage. Some individuals within the march continued to throw rocks, bottles, paint, and incendiary devices. PPB eventually cancelled the permit for the march due to the thrown projectiles, incendiary devices, and other unsafe conditions. PPB then declared an unlawful assembly. After this declaration and multiple warnings for individuals to leave the area, PPB deployed impact munitions in response to the thrown projectiles. Defendant City lacks knowledge or information sufficient at this time to admit or deny the state of mind of protesters during this event and therefore deny the allegation that peaceful protesters were confused. Except as expressly admitted herein, Defendant City otherwise denies the allegations set forth in paragraph 22.

23.     Defendant City admits that on June 4, 2017 groups of Patriot Prayer members and various counter-protesters convened in adjacent parks in downtown Portland. The City Auditor Independent Police Review report created a report about the events of June 4, 2017. The report concluded that police had detained a group of nearly 400 counter-protesters, including journalists, to investigate possible disorderly conduct, which were not allowed to leave until they and their identification were individually photographed by police. In subsequent federal court

Page 7 – DEFENDANT CITY OF PORTLAND'S AND DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT

litigation, both a federal judge and federal magistrate judge determined that the PPB detention was legal.  Except as expressly admitted herein, Defendant City otherwise denies the allegations set forth in paragraph 23.

24.     Defendant City admits that on August 4, 2018, multiple organizations held preplanned protest/rally events in Portland.  Defendant City admits that after declaring an unlawful assembly, ordering the dispersal of the crowd, providing force warnings including that riot control agents or munitions might be used, and providing time to comply, members of PPB's RRT deployed aerial distraction devices from a 40 mm less lethal launcher in the area of SW 1st and SW Columbia.  Defendant City admits that at least three persons were injured during the deployment of the aerial distraction devices.  Otherwise, Defendant City denies the allegations in paragraph 24.

25.     Defendant City admits that on October 13, 2018, members associated with Patriot Prayer and Rose City Antifa engaged in a fight on SW Washington Street between SW 4th and SW 5th Avenues near the Kelly's Olympian bar, and that some members engaged in or near the fight were injured.

26.     Defendant City denies the allegations in paragraph 26.

27.     Defendant City admits that Joey Gibson, a leader of Patriot Prayer was charged with the offense of felony riot after a confrontation between members of Patriot Prayer and other persons at a Portland bar on May 1, 2019.  Recently, a Multnomah County Circuit Court judge dismissed that charge against Mr. Gibson.  Otherwise, Defendant City lacks knowledge or information sufficient to admit or deny the allegations in paragraph 27 and therefore denies them.

Page  8 – DEFENDANT CITY OF PORTLAND'S AND DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT

### IV.     August 17, 2019

28.     Defendant City denies the last sentence of paragraph 28.  Otherwise, Defendant City lacks knowledge or information sufficient at this time to admit or deny the remainder of paragraph 28, and therefore, denies those allegations.

29.     Defendant City admits the first sentence of paragraph 29, but denies the second sentence of paragraph 29.

30.     Defendant City lacks knowledge or information sufficient at this time to admit or deny the allegations regarding the goals of the Proud Boys, or their emotional responses depicted in Figure 1, referenced in paragraph 30, and therefore denies those allegations.

31.     Defendant City admits there was an incident involving two buses at the west end of the Morrison Bridge where persons entered the street, prevented the buses from leaving, banged on the sides of the buses, and a person used a u-shaped bike lock to break the driver's window of one of the buses.   Otherwise, Defendant City lacks knowledge or information sufficient at this time to admit or deny the remainder of the allegations in paragraph 31, and therefore denies them.

32.     Defendant City denies the allegations contained in paragraph 32.

### V.     Ahern Crosses the Street at the Direction of PPB and Gets Arrested.

33.     Defendant City lacks knowledge or information sufficient at this time to admit or deny the allegations contained in paragraph 33 regarding Plaintiff's state of mind or her location earlier in the day.

34.     Defendant City admits that PPB RRT officers arrested a person (Ms. Mitsch) standing in the street, refusing to leave the street after being told by PPB to get out of the street,

Page  9 –  DEFENDANT CITY OF PORTLAND'S AND DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT

impeding traffic, near the intersection of SW Oak Street and SW Third Avenue, for Disorderly Conduct in the Second Degree, ORS 166.025.  Ms. Mitsch lowered herself to the ground and RRT officers placed her into custody. Otherwise, Defendant City denies the allegations contained in paragraph 34.

35. Defendant City denies the allegations contained in paragraph 35.

36. Defendant City admits that Defendant Kammerer is a Detective with the PPB and was a member of RRT, that he was near the corner of SW Oak Street and SW 3rd Avenue, and wore bag number 67.

37. Defendant City admits in March 2021, it settled an officer-involved shooting case with the Estate of Quanice Hayes and his mother, Venus Hayes, for approximately $2.1 million. Otherwise, Defendant City denies the allegations contained in paragraph 37.

38-44. Defendant City admits that Detective Kammerer saw Plaintiff standing in the middle of SW Third Avenue, interfering with traffic, begin walking west across SW Third Avenue and spit in the street in the direction of an RRT vehicle.  Detective Kammerer told Sgt. Cioeta that he had probable cause to arrest Plaintiff for the crime of Disorderly Conduct in the Second Degree.  Sgt. Cioeta then directed members of his squad to take Plaintiff into custody. When those officers made physical contact with Plaintiff, she immediately pulled her arms away and continued to ignore their warning and continued to resist her arrest.  Otherwise, Defendant City denies the allegations in paragraph 38 through 44.

45. Defendant City admits that on September 6, 2019 an Information of the District Attorney was filed in Multnomah County Circuit Court accusing Plaintiff of committing the offense of Disorderly Conduct in the Second Degree.

46. Defendant City denies the allegations contained in paragraph 46.

47. Defendant City admits the allegations contained in paragraph 47.

48-50. Defendant City lacks knowledge or information sufficient at this time to admit or deny the allegations contained in paragraph 48 regarding Plaintiff's alleged damages or injuries or how the State of Oregon's criminal case affected her, if at all, and therefore denies those allegations. Otherwise, Defendant City denies the allegations contained in paragraphs 48 through 50.

### Claim 1: Fourth Amendment – Unlawful Seizure – Individual Liability

### (42 U.S.C. § 1983)

51. Defendant City re-alleges the admissions and denials contained in ¶¶ 1-50 above.

52-55. The allegations contained in paragraphs 52 through 55 are not directed at Defendant City, and therefore do not require a response from Defendant City.

### Claim 2: Fourth Amendment – Unlawful Pattern and Practice – Municipal Liability

### (42 U.S.C. § 1983)

56. Defendant City re-alleges the admissions and denials contained in ¶¶ 1-55 above.

57-61. Defendant City denies the allegations contained in paragraphs 57 through 61.

### Claim 3: 14th Amendment – Due Process, Fabrication of Evidence – Individual Liability

### (42 U.S.C. § 1983)

62. Defendant City re-alleges the admissions and denials contained in ¶¶ 1-61 above.

63-67. The allegations contained in paragraphs 63 through 67 are not directed at Defendant City, and therefore do not require a response from Defendant City.

/ / /

**Claim 4: First Amendment – Unlawful Retaliation Against Speech – Individual Liability**

**(42 U.S.C. § 1983)**

68. Defendant City re-alleges the admissions and denials contained in ¶¶ 1-67 above.

69-72. The allegations contained in paragraphs 69 through 72 are not directed at Defendant City, and therefore do not require a response from Defendant City.

**Claim 5: First Amendment – Unlawful Pattern and Practice – Municipal Liability**

**U.S.C. § 1983)**

73. Defendant City re-alleges the admissions and denials contained in ¶¶ 1-72 above.

74-77. Defendant City denies the allegations contained in paragraphs 74 through 77.

**Claim 6: State Tort**

**Count 1: False Arrest**

78. Defendant City re-alleges the admissions and denials contained in ¶¶ 1-76 above.

79-80. Defendant City denies the allegations contained in paragraphs 79 and 80.

**Count 2: Battery**

81. Defendant City re-alleges the admissions and denials contained in ¶¶ 1-80 above.

82-83. Defendant City denies the allegations contained in paragraphs 82 and 83.

**REASONABLE ATTORNEY'S FEES AND COSTS**

84. Defendant City denies that Plaintiff is entitled to any attorney fees or costs in this action.

85. Unless specifically admitted above, Defendant City denies each and every remaining allegation contained in Plaintiff's Amended Complaint either because those allegations are untrue, Defendant City lacks knowledge or information sufficient at this time to

admit or deny the allegations, or those allegations are not directed to Defendant City.

## DEFENDANT CITY'S DEFENSES

### FIRST DEFENSE

**(Failure to State a Claim)**

86.  Plaintiff has failed to state a claim against Defendant City.

### SECOND DEFENSE

**(Oregon Tort Claim Act Limitation on Claims and Damages – ORS 30.260 et seq.)**

87.  Plaintiff's claims and damages against Defendant City are subject to all the limitations, conditions, and immunities contained in the Oregon Tort Claims Act, ORS 30.260 *et seq*.

### THIRD DEFENSE

**(Riot, Civil Commotion, Mob Action Immunity – ORS 30.265(6)(e))**

88.  Plaintiff's state law claims arise out of riot, civil commotion or mob action or out of an act or omission in connection with the prevention of the foregoing. Accordingly, Defendant City is immune pursuant to ORS 30.265(6)(e).

### FOURTH DEFENSE

**(Justification)**

89.  The actions by Defendant City's police officers, including Defendant Kammerer, were lawful and justified as those actions were necessary to carry out their duties as a police officer for the City.

/ / /

/ / /

## FIFTH DEFENSE

### (Privilege)

90. The actions of Defendant City's police officers, including Defendant Kammerer, were privileged, as those actions were necessary to carry out their duties as law enforcement officers.

## SIXTH DEFENSE

### (Probable Cause)

91. Any arrest or the initiation of any criminal prosecution against Plaintiff was supported by probable cause.

## SEVENTH DEFENSE

### (Reasonable Suspicion)

92. Any stop or detention of plaintiff was supported by reasonable suspicion.

## EIGHTH DEFENSE

### (Stopping of Persons/Detentions – ORS 131.615)

93. Defendant City's police officers were statutorily authorized to use physical force or other control or restraint on Plaintiff, including the use of handcuffs, to effectuate the purpose of the detention, to control the scene and to ensure their and Plaintiff's physical safety.

## NINTH DEFENSE

### (Arrest – ORS 161.205(5)/ORS 161.235)

94. Defendant City's police officers were statutorily authorized to use physical force or control on Plaintiff in making an arrest of Plaintiff.

/ / /

Page 14 – DEFENDANT CITY OF PORTLAND'S AND DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT

### TENTH DEFENSE

### (Resisting Arrest – ORS 161.260)

95. Plaintiff's use of physical force in resisting arrest by Defendant City's police officers violated ORS 161.260.

### ELEVENTH DEFENSE

### (Failure to Mitigate Damages)

96. All or part of the harm alleged by Plaintiff was a result of Plaintiff's own actions or inactions or was otherwise a result of her[1] failure to mitigate damages.

### TWELFTH DEFENSE

### (No Duplicative Damages)

97. Plaintiff is not entitled to receive duplicative damages.

### THIRTEENTH DEFENSE

### (Right to Amend)

98. Defendant City reserves the right to amend its answer and add other defenses through and after discovery.

99. Defendant City respectfully requests a jury trial.

/ / /

/ / /

/ / /

/ / /

---

[1] Defendant City's Answer and Defenses uses the pronouns "she" or "her" for Plaintiff [Hannah Ahern] consistent with the pronouns indicated in Plaintiff's Amended Complaint.

Page 15 – DEFENDANT CITY OF PORTLAND'S AND DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT

WHEREFORE, having fully answered Plaintiff's Amended Complaint, Defendant City prays for judgment in its favor, including an award of costs, disbursements and fees pursuant to 42 U.S.C. § 1983, in addition to such other relief as may be justified.

Dated:  September 15, 2022

                                          Respectfully submitted,

*/s/William W. Manlove*
WILLIAM W. MANLOVE, OSB # 891607
Senior Deputy City Attorney
Telephone: (503) 823-4047
*Of Attorneys for Defendant City of Portland*