WILLIAM W. MANLOVE, OSB #891607
Senior Deputy City Attorney
william.manlove@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **HANNAH AHERN,** | Case No.: 3:21-cv-00561-YY |
| **PLAINTIFF,** | |
| v. | **DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| **ERIK KAMMERER and CITY OF PORTLAND,** | *ORAL ARGUMENT REQUESTED* |
| **DEFENDANTS.** | |

## MOTION

Pursuant to L.R. 7-1(a), counsel for Defendant City of Portland (hereafter "Defendant City") certifies that he conferred with Plaintiff's counsel on December 19, 2023, and made a good faith effort to resolve the issues presented in Defendant City's motion, but have been unable to reach a resolution.

Pursuant to Fed. R. Civ. P. 56(a), Defendant City of Portland moves this Court for partial summary judgment in its favor on two claims in Plaintiff's Amended Complaint (ECF No. 37), as follows:

Page  1 –  DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1.      On Claim 2: Fourth Amendment – Unlawful Pattern and Practice – Municipal Liability (42 U.S.C. § 1983).  The City has not engaged in any unconstitutional pattern or practice of arresting persons such as Plaintiff without legal justification.  In addition, the City has not engaged in any unconstitutional pattern or practice of failing to investigate or impose discipline for officers violating the Fourth Amendment.  Also, the City has not failed to train its police officers to adhere to the Fourth Amendment.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Saved Magazine v. Spokane Police Dept.*, 19 F.4th 1193, 1201 (9th Cir. 2021); *Vandenburg v. Cnty. of Riverside*, 722 F. App'x 657, 658 (9th Cir. 2018); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013).

2.      On Claim 5: First Amendment – Unlawful Pattern and Practice – Municipal Liability (42 U.S.C. § 1983).  Plaintiff did not suffer any violation of her First Amendment rights; therefore, there is no City liability.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  In addition, the City has not engaged in any unconstitutional pattern or practice of retaliating against any protestor due to the content of speech, viewpoint, or perceived ideology. *Monell*, 436 U.S. at 691; *Saved Magazine*, 19 F.4th at 1201; *Vandenburg*, 722 F. App'x at 658. Also, defendant Kammerer has never acted as an official policy maker for the City. *Lytle v. Carl*, 382 F.3d 978, 981 (9th Cir. 2004).

This motion for partial summary judgment is based on the memorandum of law below, and the Declarations of Jeffrey Bell, Heidi K. Brown, Craig Dobson, Tyson Estes, Larry K. Graham, Ashley Lancaster, William W. Manlove, Bryan H. Parman, Kelli Sheffer, Wendi Steinbronn, and Elizabeth Vogan, with attached exhibits, and the complete Court file.

## MEMORANDUM OF LAW

### I.     Introduction

On Saturday, August 17, 2019, the City of Portland and its Bureau of Police, the Portland Police Bureau ("PPB"), expected numerous protests to occur in downtown Portland in Tom

Page  2 – DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT

McCall Waterfront Park. (Declaration of Wendi Steinbronn ("Steinbronn Decl."), ¶¶ 8, 9.) Based on the publicly available information, these numerous events were promoted by individuals or organizations with differing ideologies. (Steinbronn Decl., ¶ 8.) In recent, prior demonstrations in Portland, groups with opposing ideologies had resulted in some protest participants engaging in criminal behavior, including assaults, vandalism, and weapons violations. (*Id*.; See also Declaration of Bryan H. Parman ("Parman Decl."), ¶¶ 5, 9, 10 and 13.) City officials, including Mayor Wheeler, and PPB, were concerned that the demonstrations planned for August 17, 2019, would lead to similar violence between the protest participants. (Steinbronn Decl., ¶ 8.)

The demonstration events began around 9:30 a.m. with groups associated with the Proud Boys gathering on the inner east side of Portland, and persons associated with Rose City Antifa ("RCA") gathering downtown, near the Multnomah County Justice Center and Waterfront Park. (Steinbronn Decl., ¶ 14.) No organization or person had applied for any permit to use any City park or use any street for any march or demonstration activity. (*Id*., ¶ 9.) From shortly after 10:00 a.m. to approximately 11:30 a.m., the Proud Boys group and the RCA groups were marching towards and moving into Waterfront Park and PPB was trying to keep the groups separate. (*Id*., ¶ 15.) By early afternoon, fights were occurring between persons associated with the Proud Boys and RCA, including windows broken in a stopped van travelling over the Morrison Bridge. (*Id*., ¶¶ 15, 16.) Another group of about 200 people were walking in the roadway of the Burnside Bridge, and then eventually blocked traffic on MLK Blvd, requiring PPB to order people out of the roadway. (*Id*., ¶16.) Fights were occurring between persons affiliated with the Proud Boys and persons affiliated with RCA near SW Naito Parkway and NW Couch and SW Morrison Streets. (*Id*., ¶ 17.) Despite this public disorder and violence, PPB was continuing to try to keep the groups separated. (*Id*., ¶ 17.)

Plaintiff was near the northeast corner of SW Third Avenue and SW Oak Street in downtown Portland around 3:00 p.m. (See Amended Complaint, ¶ 34.) (See Steinbronn Decl., ¶

Page 3 – DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT

17.) Plaintiff walked towards a commotion and witnessed a person being arrested by PPB officers. (See Amended Complaint, ¶ 38.) (See Steinbronn Decl., ¶ 17.) Plaintiff heard the police tell people to move out of the street. (Declaration of William W. Manlove ("Manlove Decl."), ¶ 1, *Exhibit 22*, 64:1-65:6, 203:1-3, Excerpts from the Certified Transcript of the Video Deposition of Hannah Ahern.) Plaintiff initially tried to comply and get on a sidewalk, but she then moved into SW Third Ave., walking west away from the commotion, but against a "no walk" sign. (*Id*.) As Plaintiff began to cross SW Third Ave., "traffic had been moving southward on SW 3rd Ave. To avoid traffic, Ms. Ahern stopped walking and flagged several cars to pass her by." (Amended Complaint, ¶ 39.) A blue car was in the middle of the road. (Manlove Decl., *Exhibit 22*, 65:4-5.) Plaintiff waved the blue car to pass because she did not want to be in the way. (*Id*.)

Defendant Kammerer observed Plaintiff stopped in the middle of SW Third Ave., and saw an approaching truck brake hard. (Manlove Decl., *Exhibit 23*, 138:13-25, Excerpts from the Certified Transcript of the Deposition of Detective Erik Wayne Kammerer.) When he saw the truck brake hard, Kammerer believed he had probable cause to have Plaintiff arrested. (*Id*., 142:18-143:3.) Kammerer informed another PPB officer that he (Kammerer) had probable cause to arrest Plaintiff for disorderly conduct. (*Id*., 141:13-16.) Other PPB officers then arrested Plaintiff.

After Plaintiff's arrest, PPB continued to receive reports of a crowd of people moving westbound on SW Oak, several persons assaulting one another, and PPB giving force warnings to persons protesting. (Steinbronn Decl., ¶ 18.) The August 17, 2019, event was essentially over by 6:44 p.m., when PPB was debriefing the event. (Steinbronn Decl., *Exhibit 2*, p. 6.)

-------

PPB has several policies that relate to the conduct of its officers, including a policy related to arrests without warrants, use of force, and prohibitions against bias-based policing. (See Declaration of Ashley Lancaster ("Lancaster Decl."), ¶¶ 6, 8, and 19, *Exhibit 8*, *Exhibit 8a*,

Page  4 –   DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY
                        JUDGMENT

***Exhibit 10, Exhibit 10a,*** and ***Exhibit 20***.) PPB also has a specific policy that governs police responses to demonstrations and protests, PPB Directive 635.10, Crowd Management/Crowd Control.  (*Id.*, ¶ 7, ***Exhibit 9*** and ***Exhibit 9a***.)  That policy emphasizes that: "The Portland Police Bureau recognizes that the City of Portland has a tradition of free speech and assembly.  It is the responsibility and priority of the Portland Police Bureau not to unduly impede the exercise of First Amendment rights and to provide for the safe and lawful expression of speech, while also maintaining the public safety, peace and order." *Id.*, ***Exhibit 9***, p. 2.).  PPB also has a series of policies that relate to its investigation of alleged officer misconduct, its discipline for any sustained finding of misconduct, and its administration of other corrective action to improve officer service and performance.  (*Id.*, ¶¶ 9-18, ***Exhibit 11-Exhibit 19a***.)  At least since January 1, 2016, PPB has sustained allegations of misconduct against its officers related to the lack of probable cause and use of force. (Declaration of Elizabeth Vogan ("Vogan Decl."), ¶¶ 3, 4.) Notably, PPB has meted out discipline and corrective action for these sustained allegations.  (*Id.*)

Directive 635.10 establishes a Crowd Management Incident Commander ("CMIC") or Incident Commander.  (Declaration of Craig Dobson ("Dobson Decl."), ¶ 7.)  The CMIC or IC has overall authority and responsibility to conduct incident operations and is responsible for management of all incident operations at the incident site.  (*Id.*)  PPB formally trains its command staff members as a CMIC in a 40-hour Crowd Management Incident Command Training course.  (*Id.*, ¶ 9.)  This course covers a variety of topics, including a discussion of "CMIC Philosophy," which includes tenets to "Protect Constitutional Rights" and to apply "Fair and impartial enforcement of the laws."  (*Id.*)  The course also has a section discussing the First and Fourth Amendments and their relationship to crowd management and control.  (*Id.*)  Another discussion point in the course notes that all arrests must be based on probable cause.  (*Id.*)

A number of PPB command staff have served as CMICs for protest events in Portland since 2015.  (See Declaration of Larry K. Graham ("Graham Decl."), ¶¶ 2, 3; Parman Decl., ¶¶ 3, 4.; Declaration of Kelli Sheffer ("Sheffer Decl."), ¶ 3; Steinbronn Decl., ¶¶ 3, 8; Dobson Decl., ¶

Page  5 –  DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY
               JUDGMENT

6.) During the events they managed, all of these CMICs had an operational priority to facilitate free speech balanced against public safety. (Graham Decl., ¶¶ 5, 8, 11, 14, 17 and 21; Parman Decl., ¶¶ 7, 12; Sheffer Decl., ¶¶ 7, 8; Steinbronn Decl., ¶ 5; Dobson Decl., ¶ 11.)

A number of recent protests prior to August 17, 2019, involved persons and groups with opposing viewpoints or ideologies, with a history of physical confrontation and violence with one another. (Graham Decl., ¶ 20; Parman Decl., ¶¶ 5, 14; Sheffer Decl., ¶ 5.) This history of intergroup confrontation and violence presented public safety concerns for PPB during the protests. (*Id.*) PPB's CMICs worked to create "buffer zones" or "separation" between the opposing groups to minimize the occurrence of this confrontation and physical violence between the groups. (Graham Decl., ¶ 23; Parman Decl., ¶ 7; Sheffer Decl., ¶ 8; Steinbronn Decl., ¶ 15.) Notably, none of the actions of the CMICs in managing the PPB response to the events were ever based on the content of speech, message, or perceived ideology of any person or group of protestors, but instead on the conduct or behavior of the person or group of protestors, and whether that conduct or behavior was criminal or a threat to public safety. (Graham Decl., ¶ 25; Parman Decl., ¶ 16; Sheffer Decl., ¶ 11; Steinbronn Decl., ¶ 19; Dobson Decl., ¶ 13.) Furthermore, PPB's CMICs made clear in the management of these protests that all arrests were to be based on probable cause. (Graham Decl., ¶ 12; Parman Decl., ¶¶ 8, 13; Sheffer Decl., ¶ 10; Steinbronn Decl., ¶ 12.)

## II.  Pleadings

Plaintiff brings a claim against defendant City for municipal liability under *Monell*[1] alleging an unlawful pattern and practice of violating the Fourth Amendment. (Amended Complaint, p. 20, Claim 2.) Plaintiff explicitly ties her municipal claim against the City to her Fourth Amendment claim against defendant Kammerer. (Amended Complaint, ¶¶ 57, 58.) Plaintiff's claim against Kammerer is based on her allegation that she was seized "without either

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Page  6 –   DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY
            JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

reasonable suspicion or probable cause." (Amended Complaint, ¶ 53.) As such, Plaintiff alleges "Defendant Kammerer intentionally violated Ms. Ahern's right to be free from unlawful seizures, guaranteed by the Fourth Amendment. (*Id*.) With respect to her municipal claim, Plaintiff alleges "*Defendant Kammerer's conduct* is illustrative of a pattern and practice of PPB officers violating the Fourth Amendment rights of individuals at protests countering white supremacy and/or police misconduct." (Amended Complaint, ¶ 58.) (Emphasis added.) Plaintiff brings no claim of excessive force against Defendant Kammerer.

Plaintiff goes on to allege the City does not have adequate supervisory review "of incidents where officers use force." (Amended Complaint, ¶ 59.) She does, however, suggest a reference to arrests without probable cause when she complains that PPB's' internal review process "rarely categorizes such unlawful seizures as out of policy … when the arrest is without sufficient legal justification." (Amended Complaint, ¶ 59.)

Plaintiff also alleges the City has failed to train or discipline Kammerer for "violating the Constitution, as evidenced by the absence of consequences for his repeated violations." Presumably referring to her Fourth Amendment unlawful seizure claim, Plaintiff alleges the City has failed to train and discipline its police officers, including Kammerer, to follow federal constitutional protections "against these types of police and government repression." (Amended Complaint, ¶ 60.)

Plaintiff also brings a claim against defendant City for municipal liability under *Monell* alleging an unlawful pattern and practice of violating the First Amendment. (Amended Complaint, p. 23., Claim 5.) Plaintiff again refers Kammerer's conduct involved in her arrest on August 17, 2019, and refers to previous protests in Portland, as "illustrative of a pattern and practice of PPB officers violating the First Amendment rights of individuals at protest demonstrations countering white supremacist groups and/or police misconduct." (Amended Complaint, ¶ 75.) Plaintiff alleges that PPB uses police tactics to punish "left-wing or antifascist protestors," and thereby treats them differently than "right-wing or fascist protestors." (*Id*.)

Page  7 –   DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Finally, Plaintiff alleges that Kammerer is "sufficiently senior" "that his decision can fairly be said to be the official policy of the City of Portland."[2]

Defendant City has denied Plaintiff's Fourth and First Amendment unlawful pattern and practice *Monell* claims. (Defendant City of Portland's Answer and Defenses to Plaintiff's Amended Complaint, ¶¶ 56, 57-61, 73, 74-77.)

### III. Legal Argument

A municipality cannot be liable under Section 1983 on a *respondeat superior* theory. *Monell*, 436 U.S. at 690-91. Rather, liability only attaches where a municipality *itself causes* the constitutional violation through a "policy or custom, whether made by its lawmakers or by those whose edits or acts may fairly be said to represent official policy." *Id. See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (requiring a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). "To state a *Monell* claim, a plaintiff must establish: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy, custom, or practice; (3) that the policy, custom, or practice amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy, custom, or practice was the moving force behind the constitutional violation." *Sternberg v. Town of Danville*, 2015 WL 9024340, at *3 (N.D. Cal. Dec. 16, 2015) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (outlining these factors)). The "official policy" requirement was intended to "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986).*

In the present, Plaintiff has alleged the second theory of *Monell* liability – a pervasive practice or custom. To support a custom or practice claim such as this one, "[t]he practices of the government officials must be 'so permanent and well-settled as to constitute a 'custom or usage'

---

[2] Presumably, Plaintiff is referring to Kammerer's decision on August 17, 2019 to communicate to the other PPB officer that Kammerer had probable cause to arrest Plaintiff for Disorderly Conduct as "[t]o avoid traffic, Ms. Ahern stopped walking [across SW Third Ave.] and flagged several cars to pass her by." (Amended Complaint, ¶ 39.)

Page 8 –   DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY
           JUDGMENT

with the force of law'" *Estate of Shafer ex rel. Shafer v. City of Elgin, Or.*, No. 2:12-cv-00407, 2014 WL 6633106, *18 (D. Or. Nov. 21, 2014) (quoting *Monell*, 436 U.S. at 691). "A single mistake does not give rise to municipal liability; proof of random acts or isolated event are insufficient to establish custom." *Vandenburg*, 722 F. App'x at 658 (internal quotation marks omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Proof of random acts or isolated events is insufficient to establish a custom. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989).

In addition, a plaintiff must adequately establish causation. That is, regardless of what theory used to establish *Monell* liability – policy, custom, or practice – a plaintiff must establish an affirmative link between the municipal policy or practice and the alleged constitutional violation. *See City of Canton, Ohio v. Harris, supra*, 489 U.S. at 385, 391-91; *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996). "Under *Monell*, a plaintiff must show that the policy [or custom] at issue was the 'actionable cause' of the constitutional violation, which requires showing both but for and proximate causation." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012). In other words, for a policy or practice to cause a constitutional injury, it must be the "moving force causing the ultimate injury." *Oviatt v. Pearce*, 954 F.2d 1470, 1481 (9th Cir. 1992).

  A. <u>There is no *Monell* liability for any Fourth Amendment violation.</u>

As an initial matter, Plaintiff has not alleged a violation of any Fourth Amendment rights to be free from excessive force. As noted above, Plaintiff has not sued defendant Kammerer for excessive force. Rather, her Fourth Amendment claim alleges she was seized without legal justification. As a result, because she has tied her *Monell* claim explicitly to Kammerer's conduct, Plaintiff has no *Monell* claim for any Fourth Amendment violation related to excessive force. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no

Page  9 –   DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.")

In any event, to the extent Plaintiff alleges that PPB's crowd control responses on August 17, 2019, or during earlier protests show an unlawful pattern or practice of excessive force, and that allegation is related to her Fourth Amendment claim, those events involved serious criminal acts by many protest participants, widespread public disorder, property damage, and credible and immediate threats to public safety. (See Graham Decl. ¶¶ 6-8, 10, 13, 19, 23; Parman Decl., ¶¶ 10, 14; Sheffer Decl., ¶¶ 5, 6; Steinbronn Decl., ¶¶ 16-18.) The use of force options authorized by these CMICs on August 17, 2019 and during these earlier protests, coupled with announcements, force warnings, and time to comply, were constitutionally reasonable under the Fourth Amendment. (See Graham Decl., ¶¶ 5, 6, 9, 12, 15, 18, 22, 24 and 25; Parman Decl., ¶¶ 8, 13 and 15; Sheffer Decl., ¶¶ 9, 10; Steinbronn Decl., ¶¶ 7, 11, 12 and **Exhibit 1**, pp. 37-38.) The police have a legitimate interest in quickly dispersing and removing lawbreakers with the least risk of injury to police and others. *Felarca v. Birgeneau*, 891 F.3d 809, 818 (9th Cir. 2018). The police are permitted to use reasonable force to disperse any unlawful assembly. *See Wise v. City of Portland,* 483 F. Supp. 3d 956, 968-970. (D. Or. 2020). Moreover, to the extent Plaintiff relies on any allegation of omission or failure to train regarding use of force or failure to discipline, Plaintiff must prove that the City acted with deliberate indifference. *Mann v. Cnty. of San Diego*, 2016 WL 3365746, at *6-8 (S.D. Cal., June 17, 2016.) "Deliberate indifference" requires proof that that a municipal actor disregarded a known or obvious consequence of its action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The fact these CMICs repeated reached out to protest organizers and participants to facilitate the lawful expression of public speech and assembly belies any contention the City acted with deliberate indifference to the constitutional rights of any protest participant. (See Graham Decl., ¶¶ 11, 17 and 21; Parman Decl., ¶ 7; Sheffer Decl., ¶ 7; Steinbronn Decl., ¶ 7.) PPB trained its CMICs to manage protests in a

Page 10 – DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

constitutional manner. (Dobson Decl., ¶¶ 7, 9, 11-13.) Furthermore, as explained *infra* at pp. 11-15, PPB has not been deliberately indifferent with respect to investigating allegations of police misconduct, including inappropriate force or unlawful arrests, or imposing discipline or corrective action.

In addition, there is no *Monell* liability for any Fourth Amendment violation related to unlawful arrest. The CMICs for the City's protest events, including the August 17, 2019, event where Plaintiff was arrested, implemented the respective Incident Action Plans requiring all arrests to be based on probable cause, which was always their expectation anyways. (See Graham Decl., ¶¶ 3, 12, 15 and 22; Parman Decl., ¶¶ 4, 8, and 13; Sheffer Decl., ¶¶ 4, 11; Steinbronn Decl., ¶¶ 3, 12.) Moreover, Kammerer has testified he had probable cause to arrest Plaintiff for interfering with traffic. (See Manlove Decl., **Exhibit** 23, 142:18-143:3.) Even Plaintiff, alleges she stopped in the roadway "to avoid traffic" and "flagged several cars to pass her by." (Amended Complaint, ¶ 39.) These facts suggest Kammerer arguably had probable cause to arrest Plaintiff. "[Probable cause] requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 138 S. Ct. 577, 586 (2018). Again, if Plaintiff suffered no constitutional violation, there can be no *Monell* liability. *City of Los Angeles v. Heller, supra*.

      B.    <u>PPB has not been deliberately indifferent to investigating allegations of police misconduct, including allegations of wrongful arrest or excessive force.</u>

Plaintiff alleges as part of her Fourth Amendment Monell claim that PPB does not have adequate supervisory review or discipline relating to allegations of police misconduct, including use of force or arrests. (See ¶¶ 59, 60.) Plaintiff is wrong.

PPB has an established process to investigate complaints of officer misconduct and to impose discipline. (See Declaration of Jeffrey Bell ("Bell Decl."), ¶¶ 7, 8, 18.) That investigative and disciplinary process is formalized in a series of PPB Directives. (See Lancaster

Page  11 – DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

Decl., ¶¶ 8-18, *Exhibit 10-Exhibit 19a*; Bell Decl., ¶ 5.)

Complaints of misconduct are investigated by PPB Internal Affairs ("IA") or the City Auditor's Independent Police Review ("IPR"). (Bell Decl., ¶¶ 6, 7(b).) After an investigation and evaluation of all relevant evidence, including interviews, physical evidence, and documentation, the investigator submits a written report, which includes a recommended finding for each allegation or applicable area of review. (Bell Decl., ¶ 7(b).) Investigations can result in a finding for each allegation of misconduct or policy violation as: Sustained; Not Sustained; Exonerated; or Unfounded. (Bell Decl., ¶ 7(c)(i)-(iv).) The allegations are investigated under a preponderance of the evidence standard. (Id.) The written report is submitted to the PPB member's Responsibility Unit ("RU") Manager. (Bell Decl., ¶ 7(d).)[3] The RU Manager reviews the entire case file and the investigator's recommended findings to ensure the recommendation is supported by the preponderance of the evidence. (Bell Decl., ¶ 7(e).)

After the submission of the written report by the investigator with the recommended findings, the investigation and proposed findings then get reviewed by a number of additional individuals, including the appropriate Assistant Chief, IA Captain (also called the Professional Standards Division ("PSD") Captain), and the IPR Director. (Bell Decl., ¶ 7(g).) The case may also be heard by the Police Review Board ("PRB") in accordance with Directive 336.00. (Bell Decl., ¶ 7(h).) The PRB is an advisory body to the Chief of Police and includes two community members when the case involves the use of force. (Bell Decl., ¶ 7(i).) Additional reviews may also take place, depending on the circumstances, and corrective or disciplinary action will be imposed when warranted by a member's violation of PPB policy. (Bell Decl., ¶¶ 7(k)-(l).)

Corrective action or discipline can range from command counseling, a letter of reprimand, suspension without pay, or termination. (Bell Decl., ¶ 7(i); Lancaster Decl., ¶ 17, *Exhibit 19*, pp. 1-2.) Command counseling is a "formal non-disciplinary corrective action that

---

[3] A Responsibility Unit is an individual work unit within PPB (e.g., Central Precinct, Traffic Division). A RU Manager for a PPB member could be a Commander or Captain in the Command Staff. (Bell Decl., ¶ 7(d).)

Page  12 – DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT

involves verbal counseling in response to a sustained finding for a minor policy violation." (See Lancaster Decl., ¶ 12, *Exhibit 14*, p. 1.) A debrief is a "formal critique of an incident added to a not sustained finding." (Id.) "A debrief is intended to provide a learning opportunity for a member, and is non-disciplinary in nature." (Id.)

PPB keeps track of officer commendations as well as complaints of excessive force. (See Bell Decl., ¶ 8.) PPB's records show that defendant Kammerer has received 27 commendations from 1996 to October 23, 2023, either from community members or from PPB. (Bell Decl., ¶ 9.) PPB records also indicate that defendant Kammerer has received nine complaints of excessive or inappropriate force, with seven of these occurring in 2020. Kammerer has other allegations of non-force related out of policy conduct from earlier in his career. (Bell Decl., ¶ 11.) Other than the present incident with Ms. Ahern, Kammerer has never received a complaint alleging an arrest without probable cause. (Bell Decl., ¶¶ 9, 11, *Exhibit 21*.)

PPB investigated these complaints in accordance with its usual investigative procedures laid out in PPB's Directives. (Bell Decl., ¶ 12, 13.) Except for one instance, PPB's review process reached findings of Not Sustained, Exonerated or Unfounded on all of these allegations. (*Id*.) In some three of these cases, PPB did a debrief with Kammerer. In a 2020 case, PPB reached a Sustained Finding related to the failure to file a police report. PPB did a debrief of the issue with Kammerer. (Bell Decl., ¶ 14.)

Debriefs with its officers are one tool PPB uses to improve the performance. Another tool PPB uses to achieve proper performance of its employees is the use of an Employee Information System ("EIS"). (Bell Decl., ¶ 17; Lancaster Decl., ¶ 18, *Exhibit 19a*.) Through EIS, PPB tracks all uses of force, complaints about improper force, complaints of injury or physical injury and other incidents of inadequate performance, such as police vehicle collisions or damage or loss to City property- whether or not the force or performance has generated a complaint – and compares that force or performance statistically to determine if management intervention is necessary for counseling or other corrective action. (Bell Decl., ¶ 17.)

Page 13 – DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In addition, with respect to PPB's corrective action and discipline imposed on its other members, currently there have been 23 investigative cases with Sustained Use of Force allegations from January 1, 2016 to December 11, 2023. (Declaration of Tyson Estes ("Estes Decl."), ¶ 2, *Exhibit 6*; Vogan Decl., ¶ 3.) Four cases of those cases resulted in Command Counseling, six of those cases resulted in Letters of Reprimand or Written Warnings, five of those cases resulted in a One-day Suspension without Pay, one case resulted in a Two-day Suspension without Pay, three cases resulted in the members resigning, once case had no identified member three cases are still open. (*Id.*)

With respect to allegations of false arrest, PPB investigates those allegations also. (See Estes Decl., ¶ 3.) From January 1, 2016 to December 18, 2023, there were two investigative cases with Sustained Finding, both of which resulted in command counseling. (Vogan Decl., ¶ 4.)

Plaintiff also alleges the City has failed to train or discipline Kammerer for "violating the Constitution, as evidenced by the absence of consequences for *his repeated violations*." [4] (Emphasis added.) Plaintiff's hyperbolic allegations aside, she has no evidence that Kammerer has ever violated the Constitution because there is no such evidence. (See Bell Decl., ¶ 20.)

Finally, as Plaintiff's attorneys know, PPB's accountability structure is monitored as part of the City's Settlement Agreement with the U.S. Department of Justice. (Declaration of Heidi K. Brown ("Brown Decl."), ¶ 1.) Notably, lawyers and staff for the U.S. Department of Justice ("DOJ") monitor the thoroughness of PPB's investigative process for cases related to use of force and other alleged misconduct. (Brown Decl., ¶¶ 1-2.) More notably, in a court filing in May 2019, the DOJ said: ***"[o]ur review of a sample of investigative files showed that a preponderance of the evidence supports PPB's and IPR's sustained, exonerated, or unfounded findings***." (Brown Decl., ¶ 2, *Exhibit 3*, Plaintiff's Notice of Fourth Periodic Compliance

---

[4] Fed. R. Civ. P. 11(b)(2) imposes certain representations on attorneys signing pleadings, including that the "the factual contentions have evidentiary support." Of course, a complaint setting forth allegations is such a pleading.

Page 14 – DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Assessment Report, p. 6.)  (Emphasis added.)  In a court filing in January 2020, the DOJ said: "The City now has achieved substantial compliance with the Accountability Section of the [Settlement] Agreement, Section VIII."  (Brown Decl., ¶ 4, *Exhibit 4*, Plaintiff's Notice of Interim Compliance Assessment Report, p. 3.)  The DOJ went on to say: *"PPB and IPR continue to complete investigations and reach conclusions that are supported by the evidence."*  (*Id*.)  (Emphasis added.)  In an attachment to its January 2020 court filing, the DOJ said: "*We stated in our last assessment that we agree with the Compliance Officer's perception "that officers are most often held 'accountable for complying with PPB -policy and procedure'."…The same holds true now*."  (Brown Decl., ¶ 4, *Exhibit 4*, pp. 7-8.)

Plaintiff cannot show that the City has engaged in any unconstitutional pattern or practice of violating the Fourth Amendment rights of protest participants.  Plaintiff cannot show the City has been deliberately indifferent to investigating allegations of officer misconduct.  As a result, the Court should grant the City's Motion for Partial Summary Judgment and dismiss Claim 2 with prejudice.

C. There is no *Monell* liability for any First Amendment violation.

1. Plaintiff did not intend to convey a particular message to third persons by spitting towards the police.

Certainly, the First Amendment protects not simply the written or spoken word from government interference, but also certain forms of expressive conduct.  *Texas v. Johnson*, 491 U.S. 397, 404 (1989).  Significantly though, a person's mere subjective intent to express an idea through conduct, does not necessarily merit First Amendment protection.  *See United States v. O'Brien*, 391 U.S. 367, 376 (1968) ("We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."); *see also City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) ("It is possible to find some kernel of expression in almost every activity a person undertakes … but such a kernel is not sufficient to bring the activity within the protection of the First

Page  15 – DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

Amendment.")

Rather, whether certain conduct might possibly receive First Amendment protection, depends on two factors:

> Whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it."

*Texas*, 491 U.S. at 404 (quoting *O'Brien*, 391 U.S. at 410–411).

To be sure, Plaintiff is not required to show "a narrow, succinctly articulable message...as a condition of constitutional protection." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995). However, "First Amendment protection [extends] only to conduct that is inherently expressive." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006). Significantly, if explanatory speech is necessary to explain the conduct, then that is "strong evidence that the conduct at issue is not so inherently expressive that it warrants protection under [the First Amendment.]" *Id.* See also *Hightower v. City & Cnty. of San Francisco*, 77 F. Supp. 3d 867, 876–877 (N.D. Cal. 2014).

In the present case, Plaintiff was not trying to communicate any message to any third person by spitting towards the police as she was walking across SW Third Avenue. (Manlove Decl., ¶ 1, **Exhibit 22**, 200:15-201:9.) Rather, her spitting was more a "visceral reaction," "a form of self-expression." (*Id.*) Indeed, she needs explanatory speech to explain the purpose of her spitting was to show she was "disgusted with [police] behavior" for "arresting a woman for dancing." (*Id.*) Moreover, in the context of Plaintiff walking away from the arrest of the woman "dancing", and Plaintiff flagging cars by in traffic to get by, her explanatory speech is even more necessary to explain why she spat towards the other police officers arriving at the intersection of SW Third and SW Oak.

Consequently, Plaintiff has no First Amendment claim, and therefore, there can be no Monell liability for any First Amendment violation. *City of Los Angeles v. Heller, supra*.

Page  16 – DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089

      2.      PPB's crowd management is based on conduct and behavior, not speech, viewpoint or ideology.

As explained earlier, none of the actions of the CMICs in managing the PPB response to protests in Portland in the last seven years were ever based on the content of speech, message, or perceived ideology of any person or group of protestors, but instead on the conduct or behavior of the person or group of protestors, and whether that conduct or behavior was criminal or a threat to public safety. (Graham Decl., ¶ 25; Parman Decl., ¶ 16; Sheffer Decl., ¶ 11; Steinbronn Decl., ¶ 19; Dobson Decl., ¶ 13.) PPB trained its CMICs to manage protests to facilitate First Amendment activity to apply fair and impartial enforcement of the law. (Dobson Decl., ¶¶ 9, 11.)

      3.      Defendant Kammerer is not a City policymaker.

As part of her First Amendment Claim, Plaintiff alleges that "Kammerer is sufficiently senior" to be a City policymaker. (Amended Complaint, ¶ 76.) Whether an official is a policymaker for the particular act at issue is a legal question determined by looking at state or local law. *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). The Chief of Police is in charge of PPB. (See Portland City Code ("PCC") 3.20.010, PCC 3.20.030.) RRT squad leaders do not make City policy related to crowd management or control. (Dobson Decl., ¶ 7.) Rather, City policy relating to crowd management and crowd control is made through the adoption by the Chief of Police of PPB directives related to crowd control. (*Id*.)

Plaintiff cannot show that the City has engaged in any unconstitutional pattern or practice of violating the First Amendment rights of protest participants. As a result, the Court should grant the City's Motion for Partial Summary Judgment and dismiss Claim 5 with prejudice.

///

///

///

///

///

Page 17 – DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## IV. Conclusion

For the above reasons, this Court should grant the City's Motion for Partial Summary Judgment and dismiss Plaintiff's Claim 2 and Claim 5 with prejudice.

DATED: December 22, 2023.

Respectfully submitted,

*/s/ William W. Manlove*
WILLIAM W. MANLOVE, OSB #891607
Senior Deputy City Attorney
william.manlove@portlandoregon.gov
*Of Attorneys for Defendant City of Portland*

Page  18 – DEFENDANT CITY OF PORTLAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM. 430
PORTLAND, OREGON 97204
TELEPHONE: (503) 823-4047
FAX: (503) 823-3089