WILLIAM W. MANLOVE, OSB #891607
Senior Deputy City Attorney
william.manlove@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **HANNAH AHERN,** | Case No.: 3:21-cv-00561-YY |
| **PLAINTIFF,** | |
| v. | **DECLARATION OF WENDI STEINBRONN** |
| **ERIK KAMMERER, CITY OF PORTLAND; and JOHN DOES 1-5,** | (In Support of Defendant City of Portland's Motion for Partial Summary Judgment) |
| **DEFENDANTS.** | |

I, Wendi Steinbronn, declare as follows:

1. I was hired by the City of Portland's Bureau of Police on December 30, 1993.  I worked my first 12 years with the Portland Police Bureau ("PPB") as a patrol officer assigned to different precincts.   I then worked seven years as a sergeant, assigned to patrol, and then assigned to PPB's Investigations Branch.  I then worked five years as a lieutenant, assigned to patrol, then PPB's Investigation Branch, and also assigned as an executive officer in the Office of the Chief of Police.  I was then assigned to PPB's North Precinct for approximately two years as a captain, then acting commander, and for the last 10 months as the commander.  I retired

Page  1  –  DECLARATION OF WENDI STEINBRONN

from PPB on November 27, 2019. On November 30, 2019, I became the Chief of Police of Washougal, Washington where I continue as Chief of Police today.

2. While I was employed with PPB, beginning in approximately 2002, I worked as a member of PPB's Rapid Response Team ("RRT"), both as a line officer and as a squad leader. RRT was PPB's detached specialty unit primarily responsible for managing crowd control incidents. I worked as a RRT line officer or squad leader until approximately 2005.

3. Beginning in approximately 2017, I began working as a deputy incident commander for different protests and events in Portland that involved the deployment of PPB's RRT, or other uniformed police officers to manage those events. Also, beginning in approximately, 2017 I began working as an Operations Chief and Planning Chief for different protests and events that involved RRT or other PPB police officers in managing those events. In the two years prior to August 17, 2019, I had worked as either a deputy incident commander or incident commander approximately 10 times.

4. In 2018, I attended a weeklong course in incident management and response for public safety officers at Texas A&M University. In 2019 I attended training by the Federal Emergency Management Administration ("FEMA") and received a certificate in Incident Command System management. In March 2019, I attended a Level 1 Public Order/Civil Disturbance Commander's course by the Department of Homeland Security at the U.S. Secret Service Training Academy in Laurel, Maryland.

5. My priorities as an incident commander centered on four issues: (1) The number one priority was life safety. (2) Number two was to facilitate free speech. As incident commander, my focus was never on the content of a person or group's message, but rather, the conduct of the person or group, and whether the conduct was lawful. The behavior or conduct of persons or groups of persons would determine my decision-making as an incident commander. (3) Number three was the protection of property and critical infrastructure during the demonstration event. It was important for me as an incident commander to ensure that major

Page 2 – DECLARATION OF WENDI STEINBRONN

arterials were open to traffic, especially for emergency vehicles. (4) Number four was information management and situational awareness. Many demonstrations involved large numbers of people, with different groups, sometimes acting in a coordinated fashion, other times not. Sometimes the groups had a leader, other times not. Sometimes the group provided information to the City or PPB about their planned activities, other times not. Sometimes these groups acted in an aggressive or threatening fashion to others with a differing ideology, other times not. Sometimes that expressed aggression or hostility became a criminal act, other times not. In any event, because of these reasons, these demonstrations were dynamic, tense, and rapidly evolving events that required constant monitoring and shifting of police and other public safety resources.

6. In the year before August 2019, PPB's incident command staff had formalized a practice of using demonstration liaison teams. Depending on the number of different groups involved in a planned protest or event, PPB would assign two officers to a demonstration liaison team to reach out to any group organizer or self-identified leader, the permit holder (if a permit had been applied for and issued), to inquire about the group's plans and expectation for the protest or the event. In turn, the demonstration liaison team officers would communicate PPB's expectations and concerns about the protest or event. For example, if a group was planning on marching in the street without a permit, the demonstration liaison officers would ask about the expected route of the unpermitted march, in an effort to manage traffic around the planned route. The demonstration liaison officers would wear different uniforms than RRT officers or other uniformed officers managing a crowd control event. The different uniform was an effort to break through any communication barrier or culture of distrust that may have existed with a group towards the police or government. The goal of the demonstration liaison teams was to establish legitimacy and trust.

7. As a PPB incident commander, I believed it was important to provide announcements, force or arrest warnings, and a reasonable time to comply with those warnings,

Page 3 – DECLARATION OF WENDI STEINBRONN

to persons and groups of persons participating in protests or demonstrations. Announcements, force or arrest warnings, and time to comply were a necessary and important part of communicating PPB's expectations to demonstration participants, and in achieving and maintaining my operational priorities, which I note in paragraph 5 above.

8. I was the PPB Incident Commander for the numerous demonstration events that occurred in Portland on Saturday, August 17, 2019. Based on the publicly available information at the time, these numerous events were promoted by individuals or organizations with differing ideologies. Prior to August 17, 2019, other demonstrations in Portland involving individuals or groups with differing ideologies had resulted in criminal behavior by some participants, including but not limited to assaults, vandalism, and weapons violations. Based on publicly available information at the time, City officials, including Mayor Wheeler, PPB and other community members were concerned that the August 17, 2019, demonstration events were to include participants interested in committing criminal acts, including assaulting persons with different ideologies.

9. The August 17, 2019, events had been advertised to occur in in Tom McCall Waterfront Park, but no organization, event organizer, or person ever applied for any permit to use any City park or to use any of the City's streets for any march or other demonstration activity.

10. Attached to this declaration as Exhibit 1, Ahern-City_006281-6335, is a true and correct copy of the Incident Action Plan ("IAP") for the August 17, 2019, protest. I understand that because Exhibit 1 was provided confidentially to Ms. Ahern's attorneys, Exhibit 1 will be submitted under seal with a declaration from the Senior Deputy City Attorney William W. Manlove.

11. Exhibit 1 is a standard planning document used by PPB and other law enforcement agencies nationally to prepare for large events or protests. Exhibit 1, at Ahern-City_006283, reflects the priorities I discussed in paragraph 5 above. Exhibit 1, at Ahern-

Page 4 – DECLARATION OF WENDI STEINBRONN

City_006284, lists the disparate groups expected to participate in the protest, and notes the City and PPB concerns for violence among these groups, that I discussed in paragraphs 5 and 8 above. Exhibit 1, at Ahern-City_006286-6287, discusses the use of the demonstration liaison teams, that I discussed above in paragraph 6 above. I note that 13 different PPB officers were assigned to the demonstration liaison teams for the August 17, 2019, protest. Exhibit 1, at Ahern-City_006291, refers to the PPB Sound Truck, and the role of announcements and warnings, that I discussed above in paragraph 7 above.

12. Exhibit 1, at Ahern-City_006327-6318, lists PPB's Standard Rules of Engagement for Use of Force during the August 17, 2019, protest. As Incident Commander for the August 17, 2019, I expected all RRT members and other PPB officers to follow these rules of engagement, including that any arrest or citation be based on probable cause that the person arrested or cited to have committed a criminal offense, and provided that police resources were available to make the arrest or citation. However, individual officers would not need my pre-approval to make any particular arrest or issue any particular citation.

13. Attached to this declaration as Exhibit 2 is a true and correct copy of my handwritten notes for the Activity Log I created for the August 17, 2019, protest. I understand that because Exhibit 2 was provided confidentially to Ms. Ahern's attorneys, Exhibit 2 will be submitted under seal with a declaration from the Senior Deputy City Attorney William W. Manlove.

14. The August 17, 2019, events began at about 9:30 a.m. As I recall, groups associated with the Proud Boys had gathered on the inner east side and those persons associated with Rose City Antifa ("RCA") had gathered downtown, near the Multnomah County Justice Center and Waterfront Park. I understood, and continue to understand, that the Proud Boys and the groups associated with them, and RCA and the groups associated with them, were two sets of groups who had opposing ideologies, had a history of confrontation and physical violence

Page 5 – DECLARATION OF WENDI STEINBRONN

between each other, and were and continue to be examples of the groups presenting public safety concerns, that I refer to in paragraph 8 above.

15. Exhibit 2, at Ahern-City_006368, indicates that at 0956 hours, PPB received information that a person on the MAX train was openly carrying a firearm. I understood this information to mean that the person was travelling downtown to participate in the protest. Exhibit 2, at Ahern-City_006369-6370, indicates that: at 1007 hours PPB officers began seizing poles, shields, bear spray, and signs that might be used as weapons; at 1024 hours PPB had developed a plan to allow the Hawthorne Bridge to be used as a dispersal route if needed to keep the two sets of groups separate; that between 1012 and 1128 hours the Proud Boy groups and RCA groups were moving into Waterfront Park and PPB was making efforts to keep the groups separate; that between 1128 and 1205 hours that some of the Proud Boys group had moved back to the east side of the Willamette River; and that at 1245 hours a flashpoint between a small group of the Proud Boys and a larger group of RCA had occurred at SW First Avenue between SW Main and SW Madison and that one person had been arrested for Disorderly Conduct.

16. Exhibit 2, Ahern-City_006371 indicates that between 1259 and 1314 hours, a large group of about 200 people had moved towards the Burnside Bridge, walking in the travel lanes of the roadway, moving west to east on the Burnside Bridge, and then eventually blocking traffic on MLK Blvd. southbound, requiring the PPB Sound Truck to make announcements to get out of the roadway. Exhibit 2, Ahern-City_006371 also indicates that a group of 200 people had surrounded a couple of people at the Battleship Oregon Memorial in Waterfront Park and that a fight was occurring, and that PPB was trying to keep the groups of people separate. Exhibit 2, Ahern-City_006371 also indicates that at 1339 hours a van of people affiliated with the Proud Boys was traveling west bound on the Morrison Bridge. I recall a van stopped, and its windows were broken by persons affiliated with RCA.

17. Exhibit 2, Ahern-City_006372 indicates that between 1352 and 1419 hours there were increasing conflicts, skirmishes and fights occurring near SW Naito and SW First Avenue,

Page 6 – DECLARATION OF WENDI STEINBRONN

between SW Morrison and NW Couch, between the Proud Boy affiliated groups and the RCA affiliated groups. Exhibit 2, Ahern-City_006372-6373 indicates that between 1455 and 1457 hours a group of people were blocking the street at SW Third and Oak, that a crowd was circling around members of an RRT squad, and that two persons had been taken into custody.

18. Exhibit 2, Ahern-City_006373 indicates that between 1507 and 1515 hours a crowd was moving westbound on SW Oak, and another group of RCA affiliated persons had gathered in Pioneer Courthouse Square. Exhibit 2, Ahern-City_006373 also indicates at 1607 hours PPB made announcements and that at 1610 hours force warnings were given. Exhibit 2, Ahern-City_006373 indicates I saw several people chasing two males, a male had a milkshake like substance thrown at him, and another man raised a skateboard about to strike a person, but others in the crowd held that man back, preventing him from carrying out that assault. Exhibit 2, Ahern-City_006373 also indicates a male on a bicycle was assaulted by two other males after the male on the bike had spit on their car with the two other males.

19. I intended that all of my actions and decision-making as Incident Commander on August 17, 2019 to be in conformance with the operational priorities, incident objectives, and standard rules of engagement, as noted in the Incident Action Plan, Exhibit 1 to my declaration. I intended all of my actions and decision-making to be consist with the training I had received in incident management from PPB or other organizations, as noted in paragraphs 3 and 4 above. None of my actions as Incident Commander on August 17, 2019, or at any of the other approximate 10 previous times I had served as either an incident commander or deputy incident commander with PPB were based on the content, message or any perceived ideology of any person or group of protestors, but rather on the lawfulness or threat to public safety of the conduct and behavior of the person or group of protestors.

///

///

///

Page 7 – DECLARATION OF WENDI STEINBRONN

20. I make this declaration in support of Defendant City of Portland's Motion for Partial Summary Judgment.

**I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.**

DATED: _____

_____
Wendi Steinbronn

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047